**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**LLEWELLYN GEORGE, 02-A-0092,**

                             **Plaintiff,**                    **05-CV-84(Sr)**

**v.**

                                                                **ORDER**

**McGINNIS, et al.**

                             **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #17.

Plaintiff, proceeding *pro se*, commenced this suit pursuant to 42 U.S.C. § 1983 alleging that during his incarceration at the Southport Correctional Facility, he was deprived of his rights pursuant to the Eighth and Fourteenth Amendments to the United States Constitution when he was issued a deprivation order denying him exercise, haircuts, showers, cell cleaning supplies, soap, toothpaste, a toothbrush, toilet paper and hot water for sixty days after a shampoo bottle containing feces was discovered in his cell and when the Commissioner's Hearing Officer ("CHO"), denied his request for confidential testimony from his mental health social worker during the course of a prison disciplinary hearing regarding the discovery of that contraband. Dkt. #1.

Currently before the Court is plaintiff's motion to compel (Dkt. #30); plaintiff's motion for summary judgment (Dkt. #33); and defendants' motion for summary judgment.  Dkt. #34.  For the following reasons, plaintiff's motion to compel is granted in part and denied in part; plaintiff's motion for summary judgment is denied; and defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

On November 20, 2004, during a random inspection of plaintiff's cell, Corrections Officer ("CO"), P. Furney discovered a shampoo container full of feces and served plaintiff with an inmate misbehavior report charging him with violating prison rule 118.22 (unhygienic act).  Dkt. #36, p.10.  Rule 118.22 of DOCS' Institutional Rules of Conduct provides that:

> An inmate shall not commit an unhygienic act such as spitting, urinating or defecating on the floor or any other area; propelling urine, feces, bodily fluids, water, or food; or storing urine, feces or bodily fluids.

7 N.Y.C.R.R. § 270.2.  Upon the recommendation of Sergeant Casle, plaintiff was subjected to a cell shield order and deprivation order commencing November 20, 2004.  Dkt. #19, pp.50 & 55.  The deprivation order denied plaintiff exercise, haircuts, showers and cell clean-up privileges.  Dkt. #19, p.55.

By letter dated November 21, 2004, plaintiff complained that subsequent to the cell search, he was transferred to a cell which was "filthy" with "dried up urine, dust, and other unidentified filth in the sink and toilet."  Dkt. #20, p.23.  Plaintiff also

complained that the cell floor was disgusting. Dkt. #20, p.23. Plaintiff requested that he be provided with the proper materials to clean his cell, especially disinfectant to clean the sink and toilet. Dkt. #23, p.24. Plaintiff also questioned the shower and exercise deprivation order and his placement in a cell with a cell shield. Dkt. #20, p.23.

On November 22, 2004, the cell shield order was renewed until November 28, 2004 because plaintiff "had a shampoo bottle full of feces in his cell." Dkt. #20, p.39.

By Memorandum dated November 23, 2004, Deputy Superintendent for Security Services, P. Chappius, Jr., advised plaintiff that he had decided to restore plaintiff's cell clean-up privileges effective that day and would continue to review his deprivation order on a daily basis. Dkt. #20, p.22.

The cell shield order was renewed from November 29, 2004 through December 5, 2004. Dkt. #20, p.40.

By letter dated November 30, 2004, plaintiff advised Deputy Superintendent Chappius that he had received his letter informing him that his cell clean-up privileges were being restored, but complained that "it's been seven days and I am still being denied cell cleaning supplies to clean up the stale urine and other filth in my cell." Dkt. #1-2, p.13.

Plaintiff's Tier III disciplinary hearing commenced on December 2, 2004. Dkt. #36, p.14. Superintendent McGinnis authorized Lt. Kerbein to conduct the hearing. Dkt. #36, p.14. Plaintiff did not deny that he possessed the shampoo container of feces in his cell. Dkt. #20, p.8. Rather, he explained that he was having difficulty with other inmates throwing feces, coffee and food in his cell and had discussed the problem with his mental health social worker, Ms. Fuller, who spoke with prison security and advised plaintiff to write a letter to Sergeant Manos. Dkt. #20, p.9. Before he could do so, an inmate attempted to spray his cell and he grabbed the container from that inmate. Dkt. #20, pp.8-9. Plaintiff stated that he kept the bottle in his cell so that he would be able to prove that other inmates were throwing feces into his cell when he spoke to Sergeant Manos. Dkt. #20, p.10. He indicated that the container had been in his cell for two or three days before it was discovered by CO Furney. Dkt. #20, p.11.

Plaintiff requested Sergeant Manos and Mrs. Fuller as witnesses during his disciplinary hearing. Dkt. #20, p.9. Plaintiff advised Lt. Kerbein that he had informed Mrs. Fuller that he had grabbed the shampoo container of feces from the inmate who was attempting to spray his cell, but Mrs. Fuller was unable to comment on her conversation with plaintiff without a "confidential tape." Dkt. #20, pp.13-15. However, she did state that "if there was any type of security concern that I had that effected [sic] the security of this facility I would bring that to the Sergeant[']s attention." Dkt. #20, p.17. Plaintiff volunteered to sign a release waiving confidentiality of his conversations with Mrs. Fuller, but Lt. Kerbein determined that any discussion plaintiff may have had with Mrs. Fuller as to how or why he came to possess the shampoo container was

-4-

irrelevant given that the very act of possessing a container filled with feces was a violation.  Dkt. #20, p.18.  Lt. Kerbein denied permission to call Sergeant Manos because he could not provide any direct testimony regarding the incident.  Dkt. #36, p.13. Lt. Kerbein accepted plaintiff's testimony that other inmates had been "throwing" on him.  Dkt. #20, p.9.

Lt. Kerbein found plaintiff guilty of the violation based upon the discovery of the shampoo container of feces in his cell and plaintiff's admission that he possessed it.  Dkt. #20, p.20.  Lt. Kerbein imposed a penalty of six months in SHU, with 3 months suspended.  Dkt. #36, p.7.  Plaintiff's appeal of the decision was affirmed by Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, on January 27, 2005.  Dkt. #36, p.16.

The cell shield order was continued from December 6, 2004 through December 12, 2004.  Dkt. #20, p.41.

On December 10, 2004, plaintiff filed a grievance challenging the deprivation orders and cell shield order.  Dkt. #20, p.30.  Specifically, plaintiff complained:

> It's been nineteen days since I have been deprived of my exercise, showers, toiletries and cell cleaning supplies, and hot water in my cell.  The cell stinks, because there is old urine all over the toilet, and I am behind a cell shield twenty-four hours a day, without any exercise or fresh air.  This is definitely a health hazard . . . and [I] am being denied medical treatment.  The officers have a "full shield hatch" at their disposal, so there is no logical excuse for them to deprive me of toiletries and cell cleaning supplies.  As for the deprivation order on my showers and exercise, every prisoner on

> Level One are kept in mechanical restraints, the entire period they are out of their cells. So there is no reasonable excuse for the staff to deprive me of my showers and exercise. Further, I have attempted more than once to wash up in the sink, but sink [sic] is too filthy and the water is too cold.

Dkt. #20, p.32.

The cell shield order was continued from December 13, 2004 through December 19, 2004. Dkt. #20, p.42.

The Inmate Grievance Resolution Committee ("IGRC"), denied plaintiff's grievance on December 14, 2004 on the ground that

> Deprivation orders authorized by the Deputy Superintendent for Security or his designee and reviewed by same on a daily basis. IGRC has no power to supersede the DSS in security matters.

Dkt. #20, p.31.

The cell shield order was discontinued on December 20, 2004. Dkt. #20, p.43.

Plaintiff appealed the IGRC's determination to the Superintendent, who denied plaintiff's request on December 21, 2004 on the ground that the deprivation orders were issued for legitimate security reasons as set forth in Directive 4933, section 305.2. Dkt. #20, p.34.

By letter dated December 23, 2004, plaintiff advised Captain Sheahan, the Acting Deputy Superintendent of Security, that

> Up to this current date, I am still being deprived of my showers, exercise, cell clean-up supplies, soap, toothpaste, toothbrush, and toilet paper. And the officers and area supervisors are still refusing to turn on the hot water in my cell. Apparently, the deprivation orders have not been discontinued, as you have stated. Please look into this matter.

Dkt. #1-2, p.5.

Plaintiff appealed the Superintendent's determination to the Central Office Review Committee ("CORC"), which denied plaintiff's appeal on February 16, 2005 and issued the following decision:

> CORC notes that on 11/20/04 the grievant was placed on a deprivation order for exercise, showers, haircuts and cell clean up in accordance with Directive #4933. Periodic reevaluations of the grievant's behavior resulted in the removal of the cell clean up deprivation on 11/22/04, haircuts on 11/26/04, showers on 12/3/04, and the discontinuation of the deprivation order on 12/13/04. During this time the grievant was seen seven times by medical staff to address his concerns.[1] The grievant was not deprived of water and toiletries as alleged.

Dkt. #20, p.27.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[1] Southport's medical grievance records indicate that plaintiff was seen by the block nurse on November 22, 2004; November 23, 2004; November 29, 2004; December 2, 2004; December 20, 2004 and refused sick call on November 30, 2004 and December 27, 2004. Dkt. #30, p.37.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

**Cruel and Unusual Punishment**

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991), *quoting Estelle v. Gamble*, 429 U.S. 97 (1976). In order to prevail on such a claim, the plaintiff must satisfy both an objective and subjective element.

To satisfy the objective element, the plaintiff must demonstrate that the conditions of his confinement resulted in "unquestioned and serious deprivations of

basic human needs" or deprived the inmate of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Deputy Superintendent Chappius declares that plaintiff was only deprived of cleaning supplies for three days, haircuts for six days, showers for thirteen days and exercise for twenty-three days, and specifically denies that plaintiff was deprived of soap, toothpaste, a toothbrush, toilet paper or hot water. Dkt. #35, ¶¶ 13-14.  Documentation from DOCS indicates that the clean-up privilege was restored on November 23, 2004; haircut privileges were restored on November 26, 2004; shower privileges were restored on December 3, 2004; and exercise privileges were restored on December 13, 2004.  Dkt. #19, pp.55-58. Documentation from DOCS further indicates that the cell shield order was discontinued on December 20, 2004 – thirty days from the discovery of the contraband.  Dkt. #19, p.59.  Such deprivations would not satisfy the objective element for an Eighth Amendment claim.

However, plaintiff affirms that he was denied soap, showers, toilet paper, cell cleaning supplies, a toothbrush, toothpaste, exercise and running water for approximately sixty days.  Dkt. #1, p.8; Dkt. #2; Dkt. #33-2, ¶ 1.  Plaintiff's contemporaneous complaints to prison officials are consistent with this affirmation. Dkt. #1-2, pp.5-23. The Court has no difficulty determining that plaintiff's description of his conditions of confinement, if proven, would meet the objective element for an Eighth Amendment claim.  As this discrepancy demonstrates a genuine issue of material fact regarding the conditions of plaintiff's confinement following the discovery of contraband in plaintiff's cell, summary judgment is not appropriate on this ground.

To satisfy the subjective element in a claim challenging an inmate's conditions of confinement, the plaintiff must demonstrate that the defendant acted with a deliberate indifference to inmate health or safety. *Trammell v. Keane*, 338 F.3d 155, 162-63 (2d Cir. 2003).  A "prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994), *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* at 66, *citing Farmer*, 511 U.S. at 835.  The Court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."  *Farmer*, 511 U.S. at 842.

When the conditions complained of are the result of disciplinary measures imposed against an inmate, the "deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns."  *Trammell,* 338 F.3d at 163.  Thus, the Court must ask whether a deprivation order "was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to [plaintiff's] health and safety."  *Id.*

While the Court would have no difficulty determining that the denial of cell clean-up privileges for three days; haircut privileges for six days; showers for thirteen

days; and exercise for twenty-three days was reasonably calculated to restore prison discipline and security in light of plaintiff's admission to possessing a container of feces in his cell, it could not justify withholding those items, as well as toilet paper, toothpaste, a toothbrush, or soap from plaintiff for sixty days, as plaintiff affirms.  Accordingly, summary judgment is inappropriate with respect to the subjective element of plaintiff's Eighth Amendment claim as well.

**Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because it was objectively reasonable for them to issue and implement the cell shield and deprivation orders.  Dkt. #37, pp.14-15.

Government officials are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 526 U.S. 603, 614 (1999), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> The qualified immunity defense requires consideration of the clarity of the law establishing the right allegedly violated and whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that the applicable law was being violated.  These inquiries combine to form a standard that the Supreme Court has called "objective reasonableness," that is, whether it was objectively reasonable for a defendant to think that the challenged conduct did not violate the plaintiff's clearly established rights.

*Vega v. Miller*, 273 F.2d 460, 466 (2d Cir. 2001) (internal citations omitted).  Defendants

are entitled to qualified immunity if (1) their actions did not violate clearly established law or (2) it was objectively reasonable for them to believe that their actions did not violate such law. *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999). It has been said that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. at 640 (citations omitted). Thus, the doctrine of qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

In the instant case, the Court has no doubt that reasonable prison officials would understand that depriving an inmate of soap, showers, toilet paper, cell cleaning supplies, a toothbrush, toothpaste, exercise and running water for approximately sixty days, as plaintiff asserts, constitutes a violation of the Eighth Amendment. Accordingly, defendants are not entitled to qualified immunity on the current record.

**Denial of Due Process**

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996). Defendants do not

challenge plaintiff's liberty interest in this motion, but focus instead upon the process that was afforded to plaintiff.  Accordingly, for purposes of this motion for summary judgment, the Court will assume that plaintiff has demonstrated a protected liberty interest in avoiding a penalty of six months in SHU, with 3 months suspended, and focus instead upon whether plaintiff received all the process he was due during his disciplinary hearing.

### Deprivation of Witnesses

Plaintiff argues that Lt. Kerbein obstructed plaintiff's attempts to present witnesses and mitigating evidence to establish that he had "snatched the bottle away from another prisoner" who was squirting feces into his cell and had sought assistance in addressing the situation with Mrs. Fuller, who recommended that he discuss the situation with Sergeant Manos, but that he was unable to do so before his cell was searched and the contraband discovered.  Dkt. #40, ¶ 5.  Plaintiff complains that he provided this information to Sergeant Casle after the contraband was discovered, but Sergeant Casle failed to prepare a written report of their conversation.  Dkt. #40, ¶ 5.

Lt. Kerbein argues that his decision not to call Sergeant Manos as a witness and to limit Mrs. Fuller's testimony at the disciplinary hearing was justifiable and did not deprive plaintiff of the process required pursuant to the Fourteenth Amendment to the United States Constitution.  Dkt. #37, pp.12-13.

In *Wolff v. McDonnell*, the Supreme Court of the United States determined that an

> inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

418 U.S. 539, 566 (1974).  In reaching this conclusion, the Court recognized that

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.*  In exercising that discretion, prison officials must be able to

> explain, in a limited manner, the reason why witnesses were not allowed to testify . . . either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing.  In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte v. Real*, 471 U.S. 491, 497 (1985).  A hearing officer may rationally exclude witnesses or documents when they would be irrelevant or unnecessary to a determination of the issues in the disciplinary hearing.  *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999).  The burden is on the prison official to demonstrate "the rationality of his position."  *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990).

In the instant case, Lt. Kerbein denied Sergeant Manos as a witness because he had no direct knowledge of the incident and because Lt. Kerbein accepted plaintiff's representation that he was having problems with other inmates.  Dkt. #36, ¶ 10.  Lt.

Kerbein denied any further testimony from Mrs. Fuller because he understood her testimony that she would have notified security if plaintiff had informed her of a security threat to contradict plaintiff's assertion that he had informed her that he possessed the container of feces. Dkt. #36, ¶ 13. These are rational determinations, particularly in light of the narrow charge presented, *to wit*, storing feces, which plaintiff admitted. Dkt. #20, p.8.

The Court notes that plaintiff did not request Sergeant Casle as a witness, but simply questioned the absence of a written report from him as to their conversation immediately following the discovery of the contraband. Even if plaintiff had requested Sergeant Casle as a witness, his testimony would not have contradicted plaintiff's admission to the facts necessary to convict him of the charge, *to wit*, storing feces. Accordingly, plaintiff was not deprived of his right to call witnesses in his defense at his disciplinary hearing.

<u>Impartiality of Hearing Officer</u>

Plaintiff argues that Lt. Kerbein was not fair and impartial. Dkt. #40, p.8.

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *see Wolff*, 418 U.S. at 570-71; *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he

would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir.1990); *see Francis v. Coughlin*, 891 F.2d 43, 46 ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100 F.3d at 259; *see Francis*, 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis*, 891 F.2d at 46.

There is nothing in the transcript of the administrative hearing to suggest that Lt. Kerbein was not impartial. Plaintiff admitted that he stored a container of feces in his cell for approximately three days. Plaintiff's explanation as to why he possessed the container of feces does not negate Lt. Kerbein's determination that he committed an unhygienic act.

<u>Selsky's Affirmance</u>

Since Lt. Kerbein afforded plaintiff all the process that he was due at the disciplinary hearing, Director Selsky's affirmance of that decision cannot be violative of

plaintiff's constitutional rights.  *See Hameed v. Mann*, 57 F.3d 217, 224 (2d Cir. 1995) (Selsky entitled to dismissal of claims where plaintiff failed to establish constitutional violations at disciplinary hearing).

**Motion to Compel**

Document Request No. 1

Plaintiff seeks a photograph or sketch of a cell hatch, along with an explanation of the purpose of a cell hatch.  Dkt. #30, p.5.  Plaintiff argues that this information is relevant to demonstrate that it was unnecessary to deprive plaintiff of certain items because they could have been provided to him *via* the cell hatch.  Dkt. #30, p.4; Dkt. #40, p.5.  However, defendants have admitted that the cell hatch was available to serve plaintiff with toiletries, cell cleaning supplies, laundry services and mail, so there will be no need for plaintiff to establish that fact through documents.  Dkt. #18, No. 1.  Accordingly, this aspect of plaintiff's motion to compel is denied.

Document Request No. 2

Plaintiff seeks copies of all grievances filed by other prisoners at Southport prior to November 20, 2004 concerning the same or similar deprivations.  Dkt. #30, p.5.  Defendants argue that this request is overbroad, unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Dkt. #26, p.3.  Specifically, defendants argue that Southport is unable to sort grievances or complaints regarding deprivation orders from other grievances without reviewing each grievance individually.  Dkt. #26, p.3.

Plaintiff argues that he will need to demonstrate that the deprivation order imposed upon him was extreme. Dkt. #30, p.4.

While the Court agrees that plaintiff's request is overbroad and unduly burdensome as written, Southport should be able to inform plaintiff as to the number of inmates subjected to deprivation orders; the justification for such orders; the type of deprivations imposed; and the length of the deprivations in order to provide plaintiff context as to the type and duration of deprivation orders prevalent at Southport, which may be relevant to a jury's assessment of whether the deprivations imposed upon plaintiff were consistent with the security threat presented. This request shall be limited to six-months prior to plaintiff's deprivation order. Defendants shall produce this information within sixty days of this Decision and Order.

### Interrogatory Nos. 1-3

Plaintiff sought information as to whether plaintiff was served with any violations or misbehavior reports during the time period in which he was subject to the deprivation order. Dkt. #30, p.6. Plaintiff also asked whether he had a history of assault on prison staff or committing unhygienic acts prior to November 20, 2004. Dkt. #30, p.6. Defendants responded by producing a copy of plaintiff's disciplinary history. Dkt. #27, pp.5-8. This response is sufficient.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel (Dkt. #30), is granted in part and denied in part; plaintiff's motion for summary judgment (Dkt. #33), is denied; and defendants' motion for summary judgment (Dkt. #34), is denied with respect to plaintiff's cause of action alleging cruel and unusual punishment and granted with respect to plaintiff's cause of action for denial of due process.  As a result, the Clerk of the Court is directed to enter judgment in favor of defendants Kerbein and Selsky.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED:  Buffalo, New York
         September 23, 2008

                                 s/ H. Kenneth Schroeder, Jr.
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**